**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 12th day of March, 2015.**



_____
Robert D. Berger
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

Corey William Cannella and
Michelle Elaine Cannella,                                        Case No. 14-21398

    Debtors.                                                                 Chapter 13

**MEMORANDUM OPINION AND ORDER
CONFIRMING DEBTORS' CHAPTER 13 PLAN**

Confirmation of Debtors' chapter 13 plan is pending before the Court.[1] W.H. Griffin, the chapter 13 trustee (the "Trustee"), objects and alleges Debtors' proposed plan fails to satisfy the best-interests-of-creditors test under 11 U.S.C. § 1325(a)(4) because Debtors fail to address

---

[1] Doc. 4. Debtors, Corey W. Cannella and Michelle E. Cannella, appear by their attorney, David A. Reed, Kansas City, KS. Trustee, William H. Griffin, appears in person.

- 1 -

15.03.12 Cannella Order re Plan Confirmation.wpd

$3,010 of non-exempt assets.[2] The Court, having reviewed the pleadings and counsels' arguments, overrules the Trustee's objection. Debtors' proposed chapter 13 plan complies with § 1325(a)(4)[3] because Debtors established that unsecured creditors would receive as much through the proposed chapter 13 plan as they would if the Debtors liquidated under chapter 7.

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 to decide the matter in controversy.[4] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The pleadings do not contest the core nature of this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408.

## FINDINGS OF FACTS

Debtors filed for chapter 13 relief on June 12, 2014. Debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") indicates that Debtors are below-median income debtors. Debtors report annualized current

---

[2] Doc. 13. All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532, unless otherwise specifically noted.

[3] The confirmation standard under § 1325(a)(4) is often referred to as the "best-interests-of-creditors-test" or "the liquidation test." Under § 1325(a)(4), a debtor's chapter 13 plan must provide for distributions to allowed unsecured claimants in an amount not less than the amount that would be paid to such claimants if the debtor's estate were liquidated under chapter 7.

[4] The District Court for the District of Kansas refers all cases and proceedings in, under, or related to Title 11 to the District's bankruptcy judges pursuant to the Amended Standing Order of Reference, effective June 24, 2013, referenced in D. Kan. Rule 83.8.5.

monthly income of $38,628.[4] The applicable median family income is $73,514.[5] Debtors' Schedule I and J reflect a monthly net income of $996. Debtors' chapter 13 plan (the "Plan") proposes a monthly payment of $996 for 57 months for a total of $56,772. Of the $996 monthly payment, $666 will be paid to Ocwen Loan Servicing, LLC, the first mortgagee on Debtors' residence. Debtors' Plan proposes to strip off a second priority residential mortgage of $20,447.30 held by Specialized Loan Servicing and treat the mortgage debt as wholly unsecured. Debtors propose to pay $132 a month to Fifth Third Bank on a 2008 Buick LaCrosse and $20 a month to Nebraska Furniture Mart for a television and computer. Debtors also propose to pay the Trustee no less than 10 percent of all funds disbursed and Debtors' attorney's fees in the amount of $3,500. Debtors' petition listed $3,010 in non-exempt equity in the form of cash on hand and cash deposits in three bank accounts. Debtors had: (a) $10 in cash; (b) $1,300 in a Bank Midwest checking account; (c) $1,100 in a U.S. Bank checking account; and (d) $600 in a U.S. Bank savings account. Despite these holdings, Debtors' Plan proposes to pay nothing to general unsecured creditors.

On July 11, 2014, the Trustee filed an objection to confirmation of Debtors' Plan. The Trustee objected because the Plan failed to address the $3,010 in non-exempt assets. Debtors did not file a reply. At an August 19, 2014, hearing, both parties were directed to submit briefs by October 3, 2014. The Trustee was directed to begin distributing funds pursuant to the Plan as

---

[4] Doc. 1 at 9.

[5] Debtors filed bankruptcy on June 12, 2014. The United States Department of Justice, *Census Bureau Median Family Income By Family Size* (Cases Filed Between May 1, 2014 and October 31, 2014, Inclusive), *available at* http://www.justice.gov/ust/eo/bapcpa/20140501/bci_data/median_income_table.htm.

- 3 -
15.03.12 Cannella Order re Plan Confirmation.wpd

though confirmed. On September 23, 2014, the Trustee filed a brief in support of his objection to confirmation.[6] The Trustee argued that Debtors' Plan must comply with the best-interests-of-creditors test under § 1325(a)(4) by establishing that unsecured creditors would receive as much through the Plan as they would if Debtors liquidated under chapter 7. On October 3, 2014, Debtors filed a brief in opposition to the Trustee's objection to confirmation.[7] Debtors argued that § 1325(a)(4) authorizes the deduction of § 503(b)(1) administrative expenses and in this case the flat pre-confirmation attorney fee of $3,500 is equivalent to the administrative expenses that could occur in the administration of a chapter 7 estate.

## LAW

Unsecured creditors in a chapter 13 must be paid at least as much as they would have received in a chapter 7 liquidation. Section 1325(a)(4) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if— . . .
> (4) the value, as of the *effective date* of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.][8]

This requirement does not differentiate between priority and general unsecured claims. In bankruptcy parlance, § 1325(a)(4) has traditionally been known as "the best-interests-of-creditors test" or "the liquidation test" (the "Test"). The Test requires the court to conduct a

---

[6] Doc. 22.

[7] Doc. 23. Debtors do not dispute that the cash assets are non-exempt property.

[8] 11 U.S.C. 1325(a)(4), emphasis added. Nearly identical language is found under the chapter 11 and chapter 12 best interests tests. § 1129(a)(7)(ii) and § 1225(a)(4).

- 4 -
15.03.12 Cannella Order re Plan Confirmation.wpd

hypothetical chapter 7 liquidation—on the *effective date* of the proposed plan. The term *effective date* is not defined within the Code even though it is used elsewhere in chapter 13 and in chapter 11.[9] Regardless, this Court must give effect to the term. Ultimately, the effective date may remain unknown until the plan is confirmed, because the effective date is normally the date the confirmation order becomes final.[10] The Test establishes a minimum amount debtors must pay allowed unsecured creditors through their chapter 13 plan. Courts will not confirm plans failing the Test. Unsecured creditors in a chapter 13 must be paid at least as much as they would have received in a chapter 7 liquidation. The Test ensures unsecured creditors are treated fairly in both chapters 7 and 13. If unsecured creditors would receive a distribution in a chapter 7 bankruptcy, they should receive the same amount in a chapter 13. However, when comparing those two amounts, debtors are allowed to deduct the administrative expenses involved in liquidating an item in chapter 7. For instance, under § 326(a), the Trustee would be entitled to 25 percent of the first $5,000 distributed plus additional administrative expenses. Courts must make "informed, independent findings," but "need not launch an independent investigation."[11] The application of the Test "rests within the sound judicial discretion of the bankruptcy court."[12]

## ANALYSIS

This Court must determine what would be available to unsecured creditors if a chapter 7

---

[9] §§ 1325(a)(5)(B)(ii), 1328(b), and 1129(b)(2)(A)(ii).

[10] 8 COLLIER ON BANKRUPTCY ¶ 1325.05[2][a], at 1325-20 (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2014).

[11] *Id*. ¶ 1325.05[1], at 1325-19.

[12] *Id*.

liquidation were held on the effective date of the plan. The Test "has been met if the present value of the distributions to unsecured creditors as of the 'effective date of the plan' is equal to or greater than the value of a hypothetical chapter 7 liquidation held *on such date*."[13] Here, the Trustee would urge the Court to equate the effective date of the Plan with the Debtors' petition date. However, "[t]here does not seem to be any language or structure of the Code that would equate the 'effective date' with the petition date . . ."[14] Reason dictates that a chapter 13 plan must actually be confirmed before it can have an effective date. The confirmation date and effective date of a plan may not always coincide. However, it only follows that confirmation must actually occur first. Selecting the petition date as the effective date of a chapter 13 plan would "give effect to the plan before it has been confirmed."[15] Therefore, the effective date of the plan occurs at confirmation, "or some time thereafter, as explicitly stated in the plan itself."[16] For the foregoing reasons, this Court finds that the effective date of a chapter 13 plan under § 1325(a)(4) is the date of plan confirmation, unless the plan itself defines a future date.[17]

Here, the effective date of Debtors' Plan remains unknown because their Plan has not

---

[13] *In re Gibson*, 415 B.R. 735, 737–38 (Bankr. D. Ariz. 2009) (emphasis provided in original).

[14] *Id*. at 738. Fed. R. Bankr. P. 3015(b) requires a chapter 13 debtor to file a plan with the petition or within 14 days thereafter.

[15] *Gibson*, 415 B.R. at 738.

[16] *Id*. *See* Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 AM. BANKR. L.J. 133, 137 n.24 (1979); *In re Anderson*, 367 B.R. 727, 731 n.15 (Bankr. D. Kan. 2007) (citing *In re Hutchinson*, 354 B.R. 523, 532 n.27 (Bankr. D. Kan. 2006)); *In re Roe*, 14 B.R. 649, 653 (Bankr. D. Kan. 1981).

[17] Debtors' Plan did not define a future date. Technically, the effective date is the date the confirmation order becomes final. However, for the purpose of implementing § 1325(a)(4), the effective date is the date of plan confirmation.

15.03.12 Cannella Order re Plan Confirmation.wpd

been confirmed. It is known that the effective date of Debtors' Plan, and thus the basis for determining compliance with the Test, will occur, if at all, at some time in the future. However, § 1325(a)(4) still requires the Court to conduct a hypothetical liquidation to determine whether Debtors' Plan is confirmable under the Test. Therefore, the date for the hypothetical liquidation falls sometime after the petition date and after the Debtors or their attorney propose a chapter 13 plan.

Thus, given the timing of the effective date under § 1325(a)(4), the issue is whether the $3,010 in non-exempt equity would be available for general unsecured creditors in a hypothetical chapter 7 liquidation on the effective date of the Plan. The Court holds that it would not.

Under § 326(a), the chapter 7 trustee would be entitled to 25 percent of the first $5,000 distributed plus administrative expenses in a hypothetical chapter 7 liquidation. Though Debtors' $3,010 of non-exempt assets are easily liquidated, it still requires administration. Therefore, the Court estimates 33 percent or approximately $1,000 of Debtors' non-exempt assets would be consumed by the Trustee's § 326(a) statutory fees and related administrative expenses. This reduces the amount of non-exempt assets available to unsecured creditors to approximately $2,000 under the Test.

Under § 327, a trustee may employ professionals, such as attorneys, "to represent or assist the trustee in carrying out the trustee's duties under this title."[18] In chapter 7 cases, debtors' counsel would need to seek the trustee's permission to represent debtors.[19] Chapter 13

---

[18] 11 U.S.C. § 327.

[19] *Lamie v. U.S. Trustee*, 540 U.S. 526, 538–39 (2004).

cases are different as "§ 327 of the Bankruptcy Code simply does not apply to chapter 13 debtors who seek to employ professionals."[20] Unlike some states,[21] Kansas does not have a local rule requiring debtors–other than chapter 7 debtors–to seek court approval of professionals in chapter 13 cases. Here, Debtors' counsel is automatically appointed without the Trustee's approval.

Under § 503(b)(1),[22] debtor's attorneys are paid via property of the estate because they are professionals providing for the preservation and benefit of the estate after the commencement of the case. Attorneys spend considerable pre-confirmation time counseling and preparing debtor's chapter 13 plans, appearing at hearings, and drafting secondary pleadings. These attorneys are required to complete significant due diligence and fact checking with debtors who frequently lack financial prowess and record keeping. The value a chapter 13 debtor's attorney brings to the estate and to clients occurs before plan confirmation and involves navigating obstacles presented by creditors and trustees—as the instant case illustrates. Consequently, a substantial portion of the fees attorneys charge for chapter 13 filings are often earned pre-confirmation.

Debtors' attorney was automatically appointed and earned his $3,500 in fees pre-confirmation. The Debtors' attorney's fees are reasonable and are not contingent because they have been earned as of the effective date of the Plan. Therefore, under the Test there exists an

---

[20] *See, e.g.*, *In re Tirado*, 329 B.R. 244, 250 (Bankr. E.D. Wis. 2005).

[21] *See, e.g.,* Massachusetts Local Bankruptcy Rule 2014-1.

[22] Allowed administrative expense claims are entitled to priority under § 507(a)(2). In a chapter 7 case, priority claims are generally paid in full prior to any distributions that are made to general unsecured claimants. *See* 4 COLLIER ON BANKRUPTCY ¶ 507.02, at 507-13.

unsecured priority claim of $3,500 on the effective date of the Plan that must be satisfied before anything is available for general unsecured creditors. In a hypothetical chapter 7 liquidation, Debtors' attorney's fees of $3,500 would fully consume the net $2,000 of non-exempt assets and leave nothing for general unsecured creditors. The Court must apply § 1325(a)(4) and Debtors complied with the Test because the net $2,000 in non-exempt assets was fully consumed by their attorney's $3,500 unsecured priority claim. In a chapter 7 case, the general unsecured creditors receive distributions from the unencumbered asset pool after the satisfaction of § 507(a) priority claims.

This interpretation may seem nuanced, but it is no more nuanced than if a debtor in a chapter 7 case makes a split-tax-year election under I.R.C. § 1398[23] to convert post-petition tax liabilities into pre-petition priority tax claims.[24] One could argue that this hypothetical split-year election should be calculated under the Test to ascertain hypothetical distributions to general unsecured claimants.[25]

## CONCLUSION

The Trustee's Objection to Plan Confirmation is overruled because Debtors' proposed chapter 13 plan complies with § 1325(a)(4). Absent other objections to confirmation, a separate order confirming Debtors' proposed chapter 13 plan will issue forthwith.

IT IS ORDERED that the Trustee's objection to Plan Confirmation is DENIED.

---

[23] 26 U.S.C. § 1398

[24] *See* 11 U.S.C. § 346 for state and local taxes.

[25] *See* 11 COLLIER ON BANKRUPTCY ¶ TX2.05[2], at TX2-42.

**IT IS SO ORDERED**.

### 

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS